UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────
Joseph Hernandez,

                Plaintiff,        13 Civ. 2077 (JGK)

       - v.-                      OPINION AND ORDER

Metro-North Commuter Railroad,

                Defendant.
────────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The Plaintiff, Joseph Hernandez, brings this action against defendant Metro-North Commuter Railroad ("Metro-North") alleging a violation of the whistleblower provision of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. This Court has subject matter jurisdiction in this case without regard to the amount in controversy pursuant to 49 U.S.C. § 20109(d)(3). The defendant now moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the defendant's motion is granted.

**I.**

    The following facts are undisputed unless otherwise indicated.

**A.**

    The plaintiff Joseph Hernandez is an employee of the defendant Metro-North. Def.'s Rule 56.1 Stmt. ¶ 1; Pl.'s Rule

56.1 Resp. ¶ 1.  The defendant is a railroad corporation engaged in interstate commerce.  Def.'s Rule 56.1 Stmt. ¶ 2; Pl.'s Rule 56.1 Resp. ¶ 2; Compl. ¶ 5.  The plaintiff began his employment with the defendant in July 2006.  In March 2009, the plaintiff became a Carman at the defendant's freight shop in North White Plains where he was a member of the "Wreck Crew" which was responsible for responding to train derailments.  Def.'s Rule 56.1 Stmt. ¶¶ 3-5; Pl.'s Rule 56.1 Resp. ¶¶ 3-5.  Members of the Wreck Crew worked in the North White Plains rail yard Monday through Friday from 9:00am to 5:00pm and were on call 24 hours a day, seven days a week in case of any derailment.  Def.'s Rule 56.1 Stmt. ¶ 5; Pl.'s Rule 56.1 Resp. ¶ 5.  Members of the Wreck Crew also had the opportunity to work overtime during the fall months when they operated a rail washer to clear tracks of leaves and other debris.  Def.'s Rule 56.1 Stmt. ¶ 6; Pl.'s Rule 56.1 Resp. ¶ 6.  Members of the Wreck Crew were expected to obtain a commercial driver's license after joining the crew. Def.'s Rule 56.1 Stmt. ¶ 7; Pl.'s Rule 56.1 Resp. ¶ 7.  Foreman Mike Talt assigned work to the Wreck Crew according to the directions of General Foreman Robert Schiffer who in turn reported to Superintendent Robert Castellano.  Def.'s Rule 56.1 Stmt. ¶ 8; Pl.'s Rule 56.1 Resp. ¶ 8.

**B.**

On or about October 20, 2011, the plaintiff noticed a car in the paint shop at the North White Plains rail yard that he would later learn belonged to a secretary who worked at the facility.  Def.'s Rule 56.1 Stmt. ¶¶ 9-10; Pl.'s Rule 56.1 Resp. ¶¶ 9-10.  The plaintiff made a report to the Inspector General ("IG") of the Metropolitan Transportation Authority ("MTA") citing unlawful use of company time to repair a non-company, personal vehicle.  Id.  Plaintiff later told his union representative and General Foreman Schiffer about the report. Def.'s Rule 56.1 Stmt. ¶ 11; Pl.'s Rule 56.1 Resp. ¶ 11.

The IG's investigation found that employees at the North White Plains facility spent 25-45 minutes repairing scratched paint on another employee's personal car.  Pl.'s Rule 56.1 Resp. ¶ 13.  Everyone involved in the incident received a verbal reprimand from Superintendent Castellano who considered it to be a minor incident.  Def.'s Rule 56.1 Stmt. ¶ 14; Pl.'s Rule 56.1 Resp. ¶ 14.  However, after the investigation, General Foreman Schiffer told the plaintiff "you're going to be labeled squealer," and "you shouldn't have done it. The bottom line is, you f****d up, not nobody else, and for what you did, you deserve to have everybody run their mouth."  Pl.'s Rule 56.1 Resp. ¶¶ 78-81; Aff. of Marc T. Wietzke, Ex. 4.

C.

Following the report to the IG, the plaintiff was subjected to various actions that he believes were meant as retaliation for the report. Def.'s Rule 56.1 Stmt. ¶ 15; Pl.'s Rule 56.1 Resp. ¶ 15. The plaintiff testified that some coworkers made lewd and threatening remarks. Def.'s Rule 56.1 Stmt. ¶¶ 15-18, Ex. A, p. 103; see Pl.'s Rule 56.1 Resp. ¶¶ 15-18. The plaintiff also testified that he was given undesirable work assignments in retaliation for the report. Def.'s Rule 56.1 Stmt. ¶¶ 19, 23, 27, Ex. A, pp. 130-144; Pl.'s Rule 56.1 Resp. ¶¶ 19, 23, 27. Additionally, the plaintiff alleges that in retaliation for his report, he was denied the opportunity to work overtime. Def.'s Rule 56.1 Stmt. ¶¶ 28-31, 35-37; Pl.'s Rule 56.1 Resp. ¶¶ 28-31, 35-37.

In November 2012, the plaintiff bid for a new position at Metro-North's Highbridge facility in the Bronx and received the position based on his seniority. Def.'s Rule 56.1 Stmt. ¶ 34; Pl.'s Rule 56.1 Resp. ¶ 34. The plaintiff testified that after he began working at Highbridge, the alleged retaliation continued. See Def.'s Rule 56.1 Stmt. ¶¶ 44-45; Pl.'s Rule 56.1 Resp. ¶¶ 44-45.

On May 31, 2012, the plaintiff filed an FRSA complaint with the Secretary of Labor. Compl. ¶ 13. The Regional OSHA Whistleblower Office commenced an investigation into the

plaintiff's allegations.  Compl. at ¶ 14.  After 210 days passed without a decision, the plaintiff filed an Intent to File Original Action with the U.S. Department of Labor pursuant to 49 U.S.C. § 20109(d)(3).  Compl. at ¶ 15.  The plaintiff filed such action in this court on March 28, 2013.  The defendant now moves for summary judgment.

## II.

The standard for granting summary judgment is well established.  "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The

substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998).

### III.

The plaintiff in this case asserts a claim under the employee protections section of the FRSA, 49 U.S.C. § 20109.

The purpose of the FRSA "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The employee protections section was first added to the Act in 1980 to ensure that railroad companies did not retaliate against employees who, among other things, "reported violations of federal railroad safety laws or refused to work under hazardous conditions." Norfolk Southern Ry. Co. v. Solis, 915 F. Supp. 2d 32, 37 (D.D.C 2013) (citing Federal Railroad Safety Authorization Act of 1980, Pub. L. No. 96-423, § 10, 94 Stat. 1811, 1815 (1980)).

The Secretary of Labor oversees the investigation of complaints of retaliation under the FRSA. Id. at 38; see also 49 U.S.C. § 20109(d)(1). A district court may review such a complaint de novo, if, as here, "the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee." 49 U.S.C. § 20109(d)(3).

Any FRSA complaint filed with the Secretary of Labor is governed by the Wendel H. Ford Aviation Investment Reform Act for the 21st Century ("AIR21"), 49 U.S.C. § 42121(b), including its burdens of proof. 49 U.S.C. § 20109(d)(2). The parties agree that the AIR21 standards should be applied to the

7

plaintiff's complaint in this Court.[1]  To prevail on an AIR21 retaliation claim, a plaintiff "must prove by a preponderance of the evidence that (1) [the plaintiff] engaged in protected activity; (2) the employer knew that [the plaintiff] engaged in the protected activity; (3) [the plaintiff] suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action."  Bechtel v. Admin. Review Bd., 710 F.3d 443, 447 (2d Cir. 2013) (quoting Harp v. Charter Commc'ns, Inc., 558 F.3d 722, 723 (7th Cir. 2009) (alterations omitted); Allen v. Admin. Review Bd., 514 F.3d 468, 475-76 (5th Cir. 2008); 49 U.S.C. § 42121(b)(2)(B)(iv)).  Accordingly, summary judgment in this case is appropriate if, after drawing all reasonable inferences in favor of the plaintiff, no reasonable jury could find that the plaintiff has proved all of these elements.

**IV.**

The plaintiff claims that he engaged in a protected activity as described in 49 U.S.C. § 20109(a)(1), which provides:

---

[1] The statute only requires that all complaints filed with the Secretary of Labor under § 20109(d)(1) shall be governed by AIR21 rules and procedures, id. at § 20109(d)(2)(A), but each court that has considered a claim under the whistleblower provisions of the FRSA has likewise applied cases interpreting AIR21.

> To provide information . . . or otherwise directly assist in any investigation regarding any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security, or gross fraud, waste, or abuse of Federal grants or other public funds intended to be used for railroad safety or security, if the information or assistance is provided to . . .
> (A) a Federal, State, or local regulatory or law enforcement agency . . .
>     or . . .
> (C) a person with supervisory authority over the employee or such other person who has the authority to investigate, discover, or terminate the misconduct

It is undisputed that the plaintiff provided information to the MTA IG as well as his union representative and General Foreman Schiffer. This information was used in furtherance of an investigation into conduct at the North White Plains facility. The IG is an office of the MTA established by New York Public Authorities Law § 1279 with the authority to, among other things, "investigate complaints from any source or upon his own initiative concerning alleged abuses, frauds and service deficiencies." N.Y. Pub. Auth. Law § 1279. A plain reading of this statute shows that the IG is "a person with supervisory authority over the employee or such other person who has the authority to investigate, discover, or terminate the misconduct." 49 U.S.C. § 20109(a)(1)(C) (emphasis added). Accordingly, a report to the IG may give rise to protected activity under the FRSA.

9

However, in addition to showing that the IG was an appropriate individual to whom misconduct could be reported, the plaintiff must show that the information he provided concerned conduct that he "reasonably believe[d] constitute[d] a violation of any Federal law, rule, or regulation relating to railroad safety or security, or gross fraud, waste, or abuse of Federal grants or other public funds intended to be used for railroad safety or security." 49 U.S.C. § 20109(a)(1). In whistleblower claims brought pursuant to other statutes, the Second Circuit Court of Appeals has determined that a "reasonable belief contains both subjective and objective components." Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 221 (2d Cir. 2014) (citation omitted). A plaintiff must "show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation." Id. (quoting Livingston v. Wyeth, Inc., 520 F.3d 344, 352 (4th Cir. 2008)). Other courts have required a similar showing for FRSA whistleblower claims. See, e.g. Gutierrez v. Norfolk & S. Ry. Co., No. 12c2396, 2014 WL 551684, at *4 (N.D. Ill. Feb. 12, 2014) ("reasonableness must be scrutinized under both a subjective and objective standard"). Objective reasonableness in such a case is "based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the

10

aggrieved employee." Nielsen, 762 F.3d at 221 (internal citation and quotation marks omitted).

Drawing all reasonable inferences in the plaintiff's favor, the court cannot question that he honestly believed the conduct reported was an "unlawful use of company time." However, the FRSA requires a reasonable belief that the unlawfulness be related to railroad safety or security or that the conduct constitutes "gross fraud, waste, or abuse of Federal grants or other public funds intended to be used for railroad safety or security." 49 U.S.C. § 20109(a)(1). There is no indication in the record that the plaintiff considered that working on a personal car on company time might be a safety concern when he made the report to the IG. Accordingly, the plaintiff has failed to establish even a subjectively reasonable belief that would satisfy this prong of the statute.

Moreover, no objectively reasonable person in the same factual circumstances as the plaintiff could possibly believe that any railroad safety laws were violated by spending less than an hour of company time repairing a personal vehicle in the company paint shop. Additionally, no such objectively reasonable person could possibly believe that wasting under an hour of company time on a personal project in the paint shop could possibly amount to gross fraud, waste, or abuse of any funds, much less funds intended to be used for safety or

11

security.  Therefore, the plaintiff has failed to satisfy the reasonable belief factor required to establish a protected activity under the FRSA, and the defendant's motion for summary judgment should be granted.

The plaintiff argues that the time spent repairing the paint job could have been spent on other jobs related to safety and security.  For example, General Foreman Schiffer could have been available to supervise safety work if he had not directed the work on the personal vehicle.  The plaintiff also argues that the time and money used to pay the employees who worked on the car could have been spent on new rolling stock, maintenance, or placing emergency placards in the cars.  All of these arguments are sheer speculation.  The plaintiff offers nothing to suggest that the time and money used on this repair would have been used for safety or security measures, or that the plaintiff reasonably believed this to be the case at any time. Touching up the paint job on a personal vehicle simply has nothing to do with railroad safety or security.

Furthermore, the "unlawful use of company time" amounted to between 25 and 45 minutes.  The cost associated with such a small amount of wasted time is de minimis, and to suggest that the whistleblower protections of the FRSA would apply to a report on such a de minimis violation would ignore the requirement that the report concern "gross fraud, waste, or

12

abuse" of public funds.  Including the plaintiff's report within the statute would trivialize a statute whose purpose "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  49 U.S.C. § 20101.

Accordingly, the plaintiff has failed to demonstrate that he performed any protected activity.  Therefore, it is unnecessary to consider the second through fourth AIR21 factors.  The plaintiff has failed to present a prima facie case of retaliation under the FRSA, and the motion for summary judgment should be granted.


CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion for summary judgment is **granted**.  **The Clerk is directed to enter summary judgment dismissing the Complaint.  The Clerk is also directed to close all pending motions and to close the case.**

SO ORDERED.

**Dated:    New York, New York
           January 1, 2015**                  _____/s/_____
                                                    **John G. Koeltl
                                              United States District Judge**